IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| JUAN J. REYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 50092 |
| | ) | |
| THE ROCKFORD PARK DISTRICT, | ) | Magistrate Judge |
| A Municipal Corporation of the State of Illinois, | ) | P. Michael Mahoney |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Currently before the court is Defendant's September 30, 2004, Motion for Summary Judgment. Juan J. Reyes ("Reyes") brought suit against the Rockford Park District ("Park District") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. § 1981(a). Reyes, a Mexican-American male, alleges he was provided disparate training and was illegally discharged on the basis of his race and or national origin. For the following reasons, Defendant's Motion for Summary Judgment is granted.

**I.  Background**

Reyes was employed as a "Ranger 3" with the Park District on June 18, 1995. In 1999, Reyes was promoted to Corporal. On July 30, 2002, Reyes learned by letter that his employment was being terminated for: (1) inappropriate treatment of a citizen during an investigation; (2) violations of the Park District's policy prohibiting sexual harassment; and (3) failure to maintain proper CPR certification with the American Red Cross. While Defendant maintains that its termination decision was based on the above three factors, Reyes asserts that the decision was

1

influenced by racial discrimination. Reyes also claims that he was denied supervisory training.

According to the Park District's Statement of Facts, which were not responded to by Reyes, an improper investigation/interrogation of Jimmy Jackson was the impetus behind Reyes' termination. Apparently, on May 10, 2002, Reyes responded to a radio call for assistance in locating three youths fleeing Ken-Rock Park. The youths were suspected of using marijuana and they had fled from Officer Vincent. Reyes, along with three other police officers, including Vincent, approached a residence where a cook-out was being held. Jimmy Jackson was present at the cook-out, and Reyes suspected that he was one of the youths from Ken-Rock Park. Reyes instructed Vincent to place Jimmy Jackson in handcuffs because he was uncooperative, even though he was not under arrest. Reyes then decided Jackson should be transported to Ken-Rock Park for questioning, at which point Reyes dropped a green leafy substance, which may or may not have been marijuana, on the ground by Jackson. Reyes stated he put the substance on the ground to make Jackson believe that he was the one that dropped it so that he would confess. Reyes' ruse apparently worked as Jackson provided Reyes the name of one of the Ken-Rock Park suspects. Reyes submitted a report about the Jimmy Jackson incident, but he omitted the fact that he used a marijuana-like substance to elicit Jackson's confession. After receiving a citizen complaint about the incident at Ken-Rock, the Park District requested the Loves Park Police Department to investigate. Based on the Police Department's investigation report, the Park District concluded that Reyes' conduct was inappropriate and contrary to practices acceptable of Park District employees.

The Park District also claims it based its termination decision on alleged incidents of sexual harassment by Reyes that took place in 2002. According to the Defendant's uncontested

2

Statement of Facts, Reyes printed a sexually explicit e-mail picture at work and shared it with female Park District employees, Hardt and Botsford, who found the picture to be offensive. Second, Reyes admits he referred to Botsford's younger sister as a "hottie" and asked for a "hookup." Botsford complained about Reyes' conduct to the Park District, and an investigation was undertaken by Sergeant Roganowicz and Debbie Gass from Human Resources.

Finally, on June 26, 2002, the American Red Cross contacted the Park District to note that Reyes had not completed the CPR instructor re-certification requirements even though he continued to train other staff members of the Park District. The Park District cites Reyes' failure to maintain his CPR training as an additional reason for his termination.

On the other side of this lawsuit, Reyes alleges he was not provided "Supervisor School Training" when he was promoted to Corporal, like other Park District supervisors who were provided special training. However, the Park District's uncontested Statement of Facts states that supervisor training was provided to employees holding the rank of Sergeant, not Corporal.

## II. Procedure

Reyes complied with administrative prerequisites by filing timely charges with the Illinois Department of Human Rights and the EEOC. Reyes received his Notice of Right to Sue on December 18, 2002. Reyes timely filed his lawsuit on March 5, 2003. This matter is before the Magistrate Judge pursuant to consents filed by both parties on January 11, 2004. *See* 28 U.S.C. § 636(c); FED. R. CIV. P. 73.

## III. Standard of Review

Summary Judgment will be granted where the pleadings and supporting documents show that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter

of law. FED. R. CIV. P. 56(c). Whether a fact is material to the dispute is established by the governing substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1985). However, in determining if an issue of fact exists, the court will view the facts in the light most favorable to the non-moving party. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999). If the evidence is such that a reasonable jury could return a verdict for the non-moving party, a genuine issue of material fact exists. *Anderson*, 477 U.S. at 248.

## IV. Discussion

A plaintiff can survive summary judgment in an employment discrimination case either by submitting evidence, whether direct or circumstantial, of discriminatory motivation to raise a triable issue, or by stating a prima facie case under *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). Reyes attempts to avert summary judgment in both manners, but this court finds he has failed in each. Certainly, Plaintiff's case was not improved by his failure to respond to Defendant's 56.1 Statement of Facts.

### A. Reyes' Failure to Comply with Local Rule 56.1

The Park District contends that Reyes' failure to comply with Local Rule 56.1 renders all Defendant's facts admitted. Under Local Rule 56.1, the party moving for summary judgment must submit a statement of material facts, written in short numbered paragraphs with citations to admissible evidence. The opposing party must respond to each paragraph by either admitting or denying the allegations, and the party must specifically cite to supporting materials showing the existence of a genuine factual dispute. Loc. R. 56.1(b)(3)(A).

In the Seventh Circuit, district courts are entitled to expect firm compliance with Rule 56.1. *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000). Where a

party opposing summary judgment fails to respond or identify supporting materials in the record, the moving party's statements will be deemed admitted if the statements are properly supported in the record. *Garrison v. Burke*, 165 F.3d 565, 567 (7th Cir. 1999); *Koszola v. Bd. of Educ.*, 855 F.3d 1104, 1107-08 (7th Cir. 2004).

Here, the court notes that Reyes did not file any response to Defendant's Statement of Material Facts. Thus, under Rule 56.1, Defendant's Statement of Undisputed Facts is deemed admitted to the extent they are supported by the record.

### B. Direct Evidence

Reyes argues summary judgment would be improper because he has sufficient direct evidence of discriminatory intent to create a genuine issue for trial. Reyes points to several lines of evidence that he believes establish direct discrimination by the Park District. First, Reyes states he was the only supervisor not sent to supervisor school. Second, Reyes alleges he was removed form the color guard when he dyed his hair. Third, Reyes claims he was referred to as a "token" and given a fake identification card that named him "Corporal Fuck-up."

Generally, "direct evidence" of discrimination is evidence that proves discrimination without the need for inference or presumption. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Such evidence essentially requires an admission by the decision maker that his or her actions were based on prohibited animus. *Id*. (noting that an acknowledgment of discriminatory intent "may be the only truly direct evidence of intent that will ever be available"). However, one type of circumstantial evidence of intentional discrimination that constitutes "direct" evidence consists of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and

5

other bits and pieces from which an inference of discriminatory intent might be drawn." *Id*. (stating that "circumstantial evidence is admissible too, to provide a basis for drawing an inference of intentional discrimination"). Even so, evidence of inappropriate remarks not shown to be directly related to the employment decision may not support a direct-method-of-proof case. *Gorence v. Eagle Food Centers, Inc*., 242 F.3d 759 (7th Cir. 2001).

In this case, Reyes has not demonstrated direct evidence of discrimination sufficient to survive summary judgment. Reyes' first proffer of alleged direct evidence of discrimination, the Park District's failure to train him as a supervisor, is based on Reyes' unsupported belief that Corporals are entitled to special supervisory training. Apparently, when Reyes was promoted to Corporal with the Park District, the only other Corporal was Steve Mowers. (Def.'s 56.1 Stmt., 9). Steve Mowers, who had previously held the rank of Sergeant, but had been demoted, did complete special training (Def.'s 56.1 Stmt., 12), but he attended supervisory training school as a Sergeant, not a Corporal. (Def.'s 56.1 Stmt., 12, 13). Reyes does not offer any other evidence that Corporals are entitled to supervisory training with the Park District. Thus, Reyes has failed to demonstrate that the Park District directly discriminated against him by failing to provide special training because training was not provided to Corporals. Reyes cannot avert summary judgment merely because he disagrees with the Park District's training policy.

Notably, Reyes also does not meet the standards set forth by the Seventh Circuit for alleging failure to train for the same reasons. To make out a *prima facie* case of discriminatory failure to train, Reyes must demonstrate: (1) he is a member of a protected group; (2) the Park District provided training to its employees; (3) he was eligible for training; and (4) he was denied training given to other similarly situated employees who were not members of the

6

protected group. *Pafford v. Herman*, 148 F.3d 658, 668 (7th Cir. 1998). Reyes has not established that the Park District provided supervisory training to Corporals or that he was eligible for the training provided to Officer Mowers.

Second, Reyes alleges direct discrimination because he was removed from the Park District color guard when he dyed his hair. Though Reyes was removed from the color guard when he dyed the top of his hair a color different from the rest of his naturally dark hair (Def.'s 56.1 Supp. Stmt., 5), Reyes misses the point when he argues that the Park District was saying "Blonde hair is okay for white guys, but not Hispanics." (Pl.'s Resp., 11). There is no inference of discrimination from a prohibition of two-toned hair; nor is their a correlation of two-toned hair with Reyes' race or national origin. Additionally, this court agrees that it is reasonable for the Park District to expect its employees to present a professional image when marching in a parade.

Finally, Reyes claims direct discrimination because he was referred to as a "token" and given a fake identification card that named him "Corporal Fuck-up." Plaintiff does attach an I.D. labeling him in a derogatory manner (Pl.'s 56.1 Stmt., Ex. 6), but he does not state who made the card, when the card was made, whether others did or did not receive similar cards, or how the card proves discriminatory intent attributable to the Park District. Plaintiff also attaches his deposition testimony that Sergeant Nason called him a "Mexican token" and that Nason told him he was promoted over another employee because he was a token. (Pl.'s 56.1 Stmt., Ex. 4, at 109). Reyes, however, does not offer evidence that Nason's remark was made contemporaneously with or in reference to Reyes' termination. Thus, there is no link between Nason's comments and an adverse employment action, as required in the Seventh Circuit.

*Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). Here, the Park District demonstrates that Sergeant Nason was not a decision-maker in Reyes' termination because Chief Venable and Diane Barber decided to terminate Reyes. (Def.'s Resp. to 56.1, at 13-14, Ex. 6). Reyes admits that he never heard Chief Venable or Diane Barber use racial slurs. (*Id.*).

Even taken as a whole, rather than individually, Reyes' allegations do not constitute evidence of direct discrimination sufficient for Plaintiff to survive summary judgment. There is no acknowledgment of discriminatory intent by the Park District and the circumstantial evidence submitted by Reyes fails to provide a basis for drawing an inference of intentional discrimination.

### C. *McDonnell Douglas*

Turning to a *McDonnell Douglas* analysis of Reyes' claims, to survive summary judgment, Reyes must establish a *prima facie* case of discrimination, after which the burden shifts to the Park District to offer legitimate, nondiscriminatory reasons for any adverse employment action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Reyes must then rebut the Park District's proffered reasons by proving Defendant's legitimate reasons are pretext for discrimination. *Id*.

A prima facie case of employment discrimination requires Reyes to show that: (1) he is a member of a protected class; (2) he was meeting the Park District's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) other, similarly situated employees who are not members of the protected class were treated more favorably than Reyes. *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002).

In this case, the Park District maintains that Reyes cannot establish a *prima facie* case of discrimination under *McDonnell Douglas* because he cannot show he was meeting the Park District's legitimate expectations, or that similarly situated non-Mexican employees were treated better than Reyes. This court agrees.

*1.    The Park District's Legitimate Expectations*

In the Seventh Circuit, a plaintiff is required to establish specific facts showing satisfactory performance in order to create a genuine issue of material fact as to whether the plaintiff was meeting his or her employer's legitimate expectations. *See Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1124-25 (7th Cir. 1994); *Williams v. General Mills, Inc.*, 926 F.Supp. 1367, 1377 (N.D. Ill. 1996)(failure to offer any evidence that Plaintiff performed his job satisfactorily defeats his case). In this case, Reyes offers no evidence or testimony to support his own contention that his job performance was satisfactory. Reyes' own statements regarding his job performance are insufficient to avert summary judgment. *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 865 (7th Cir. 1996).

In addition, Reyes admits that certain actions taken during the course of his employment were wrong. First and foremost, Reyes admits that he placed Jimmy Jackson in handcuffs even though he was not under arrest and was unarmed. (Def.'s 56.1 Stmt., 33-35, 38). Reyes admits he placed a substance resembling marijuana near Jackson to encourage his confession. (Def.'s 56.1 Stmt., 42-44). Reyes admits that he omitted planting the marijuana look-a-like from his official report of the Jimmy Jackson incident. (Def.'s 56.1 Stmt., 47). Reyes admits planting evidence is not the right way to treat a citizen. (Def.'s 56.1 Stmt., 48).

Almost besides the point considering the above admissions, regarding the Park District's

9

allegations of sexual harassment, Reyes admits that he was taught during sexual harassment training that sexual harassment could take the form of submissions of materials of a sexual nature and jokes. (Def.'s 56.1 Stmt., 56-62). Despite the Park District's policy prohibiting sexual harassment in the workplace, which Reyes was aware of (Def.'s 56.1 Stmt., 95), Reyes also admits that he shared an e-mail picture that he considered to of a "comical sexual nature" with female Park District employees (Def.'s 56.1 Stmt., 63-73), and that he called a Park District employee's under-age sister a "hottie" and asked for a "hook-up." (Def.'s 56.1 Stmt., 74-94).

As to the Park District's CPR training requirements, Reyes admits that he was told by the Park District that he had to renew his certification. (Def.'s 56.1 Stmt., 97-106). However, Reyes never attended the re-certification class, even though he admits he continued to train other Park District employees in CPR. *Id.* As a result of Reyes' failure to re-train, Park District employees trained by Reyes also had to be re-trained. *Id.*

Besides admitting to the conduct for which the Park District stated as its reasons for terminating Reyes, Plaintiff offers no other evidence that he was meeting the Park District's legitimate expectations at the time of his termination other than his own testimony. Instead of meeting this initial burden, Reyes jumps to arguing that Defendant's reasons for terminating his employment were pretextual, and he asserts he was improperly trained. Reyes' training was discussed above, and pretext will be discussed below, but the fact remains that Reyes has not offered evidence to support that he was meeting the Park District's legitimate expectations.

While it is plain to see that Reyes is resting his case, in part, on the Park District's decision not to train him as a supervisor while expecting him to meet the standards of a police officer who held supervisor responsibilities, the court does not agree that this fact allows Reyes

to bypass an element of his *prima facie* case. As noted in *Coco v. Elmwood Care, Inc.*, "If the plaintiff has other [direct] evidence of discrimination, well and good; but if he . . . is . . . totally reliant on the *McDonnell Douglas* formula, he is out of luck if he can't show that he was meeting his employer's legitimate expectations." 128 F.3d 1177, 1179 (7th Cir. 1997).

2.  *Similarly Situated Employees*

To meet the fourth prong of the *McDonnell Douglas* test, Reyes alleges he received harsher discipline than that received by similarly situated employees outside his protected class. Key to a plaintiff's complaint that other similarly situated employees received disparate treatment is proof that the individuals with whom he or she seeks to be compared have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Williams v. General Mills, Inc.*, 926 F.Supp. 1367, 1377 (N.D. Ill. 1996)(citations omitted). The legal standard is whether a "prudent person," objectively comparing the incidents would think them roughly equivalent. *Id*.

In this case, Reyes does not identify another employee whom he claims engaged in the same level of conduct as he is charged with by the Park District. This is Reyes' primary burden in attempting to establish more favorable treatment of similarly situated employees, and his failure to do so translates into a failure to establish his *prima facie* case. Reyes' comparisons with other Park District employees' isolated and less offending conduct that does not approach Reyes' track record is deficient and unconvincing.

In attempting to identify similarly situated Park District employees receiving more favorable treatment, Reyes points to several officers. For example, he names Caucasian Officers Terry Lilja and Mark Johnson, who were not disciplined for their actions handcuffing unruly

11

suspects. In addition, Reyes names John Royster, who was disciplined for using a racial slur by written warning. Finally, Reyes points to the prevalence of sexually oriented humor in the work place, specifically naming Officers Mark Johnson and Sabas Parada, who is Hispanic (and thus not a person outside of Reyes' protected class). Yet, this court finds that none of the employees cited by Reyes engaged in the level of misconduct admitted by Reyes.

First, Officers Lilja and Johnson's handcuffing incidents were not comparable to Reyes' run in with Jimmy Jackson, which really involved three separate acts of misconduct: improper handcuffing, planting evidence to elicit a confession, and failure to submit an accurate police report. Second, though Reyes alleges an environment existed at the Park District whereby male officers exposed their testicles to other male officers, sexually oriented jokes were shared, and male officers were referred to as being "cum guzzlers," "gay," or "bitch feet," no evidence suggests that the officers included women in their antics, like Reyes did, and none of the officers named by Reyes have had sexual harassment complaints made against them. Likewise, Reyes offered no evidence other than his own testimony that other officers allowed their CPR training to lapse. Certainly, nothing in the record suggests that any of the officers cited by Reyes engaged in all three types of misconduct admitted by Reyes.

    3.    *Pre-text*

Because Reyes does not offer facts to support he has met the Park District's legitimate expectations at the time of his termination other than his own testimony, and because he cannot point to a similarly situated employee outside his protected class that was treated more favorably, this court finds Reyes has failed to state a *prima facie* case for employment discrimination under *McDonnell Douglas*. However, even if Reyes did manage to state a *prima*

12

*facie* case, he cannot show that the Park District's legitimate reasons for terminating him were actually motivated by discrimination.

In order to establish pretext, Reyes must demonstrate that the Park District's proffered explanation for an employment decision is a dishonest explanation, rather than merely an error. *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002). To do so, Reyes must show how the Park District's articulated reasons for his discharge either: (1) had no basis in fact; (2) did not actually motivate his discharge; or (3) were insufficient to motivate his discharge. *Id*. In other words, "[t]he focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000).

Again, the Park District asserts three reasons for Reyes' termination: (1) inappropriate treatment of Jimmy Jackson during an investigation; (2) violations of the Park District's policy prohibiting sexual harassment; and (3) failure to maintain proper CPR certification with the American Red Cross. Reyes asserts each of these reasons is pretextual. The court examines each reason in turn.

First, Reyes claims the Park District was not genuinely disturbed by Reyes' use of marijuana or a look-a-like substance to get information from Jimmy Jackson because Reyes was initially only accused of violating the Park District's handcuffing policy. Reyes also defends the use of a prop in an investigation, stating police officers are trained to use deception. The Park District refutes Reyes' arguments, stating the facts show that it had an honest belief that Reyes was an overly aggressive officer not fit to remain on its police force.

While it may appear disingenuous for a defendant to shift its complaints about an

13

employee, as is arguably the case here, the Park District has been clear from the start that it did not approve of Reyes' treatment of Jimmy Jackson. Reyes, himself, admits that citizens should not be treated the way he treated Jackson, and Reyes did omit a reference to the marijuana prop from his incident report. (Def.'s 56.1 Stmt., 47, 48-50). Based on the record then, there is no reason to believe Reyes' misconduct did not, or was insufficient to, actually motivate his discharge.

Second, though Reyes claims the Park District could not have seriously terminated him over his comments to Botsford and the distribution of a lewd e-mail because the atmosphere at the Park District encouraged such behavior, Reyes fails to offer facts to support his contention. More importantly, Reyes did not point to evidence that another officer's conduct was complained about in the workplace. Botsford did complain to the Park District about Reyes, and there is no reason suggested by Reyes that the Park District did not honestly believe Botsford's complaints, even though the court agrees the Park District may have engaged in a little "over-defending" in relaying the seriousness of Botsford's charges. Botsford did not have to allege harassment according to current legal standards for the Park District to be justified in disciplining Reyes.

Third, Reyes' claim that the Park District lied when it terminated his employment for failure to maintain CPR credentials is contradicted by the record. Reyes admits that the American Red Cross notified all instructors to comply with new certification requirements by December 31, 2001, and that Toye Collins of the local Red Cross chapter informed the Park District that Reyes had not completed his instructor recertification requirements, even though he continued to train others in CPR for the Park District. (Def.'s 56.1 Stmt., 97-106). Reyes also

admits all the Park District employees he trained would have to be retrained because any CPR cards issued by Reyes after December 31, 2001, were invalid. (Def.'s 56.1 Stmt., 101).

Finally, though Reyes has attempted to divide and conquer each of the Park District's proffered termination rationales, Reyes does not address the fact that the Park District received within one year three complaints about Reyes' conduct, each of which exposed the Park District to civil liability, albeit some more serious than others. Cumulatively, the evidence stacks against Reyes; not the Park District. Accordingly, the court finds Reyes' cannot establish pretext and cannot meet his burden under *McDonnell Douglas*.

## IV. Conclusion

In sum, Reyes presents no evidence, under either the direct or indirect method of proving racial discrimination, from which a trier of fact could infer that Reyes' termination was motivated by his race. Consequently, Defendants' Motion for Summary Judgment is granted.

**ENTER:**

_____

**P. MICHAEL MAHONEY, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

**DATE:** April 26, 2005

*/s/ P. Michael Mahoney*